HUMBERT, APPELLEE, *v*. INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

(No. 4029—Decided April 3, 1944.)

*Messrs. Okun & DiSalle,* for appellee.

*Mr. Percy R. Taylor,* for appellant.

LLOYD, J.   This action is in this court on appeal on questions of law from a judgment rendered for appellee in an action instituted in the Court of Common Pleas on appeal from an order of the Industrial Commission denying to the appellee, Eurie Humbert, the right to participate in the state insurance fund for injuries from an accident claimed to have been sustained by her in the course of and arising out of her employment as a traveling field representative for Thomas W. Briggs, doing business as The Welcome Wagon Service Company, who had complied with the Ohio Workmen's Compensation Act and was amenable thereto.

Her claim was disallowed by the commission on the ground that her injury was not sustained "in the course of and arising out of her employment."

Briggs was and is engaged in operating an advertising business in various cities in the United States,

among which is Toledo, and employs in each of them a "hostess" to represent him therein. The duty of a hostess is to call upon newcomers and newlyweds and give them helpful information as to schools, churches, and so forth, with the primary object of inducing them to trade with local merchants whom her employer represents.

Among the duties of a field representative is that of, when for any reason it becomes necessary, selecting a hostess and training her in the duties she is to perform.

Mrs. Humbert, in searching for a person in her judgment qualified to be a hostess, makes such contacts and seeks and attends such social and other functions as opportunity may permit for the purpose of meeting women of standing in the community from among whom she might find one available and qualified for the position of hostess. She testified: "Of course, any social affairs that we attend are supposed to be with an eye to business. I have accepted invitations to women's chamber of commerce luncheons, to chamber of commerce dinners of business and professional women's clubs," and other like functions. She was subject to the direction of her employer at all hours of the day and night. "We do not work under any hours. We are at the disposal of our company at any time."

Mrs. Humbert arrived in Toledo about July 1, 1940, and from then until August 1, 1940, endeavored to find therein a person qualified to be a hostess for her employer. In the evening of that day she had a telephone call from a Mrs. Riggs, of Rockingham street, inviting her to go with herself and Mr. Riggs to call upon and meet a Mrs. Lingenfelter. They called for Mrs. Humbert at the Y. W. C. A. and the three of them went in Mr. Riggs' automobile to the home of Mrs. Lingenfelter, 527 West Bancroft street, arriving there about eight p. m. After some general conversation in which nothing was said as to the employment of a hostess,

for the reason that Mrs. Humbert at once concluded that Mrs. Lingenfelter did not possess the necessary qualifications, they played "bridge" until toward midnight, when the Riggs undertook to take Mrs. Humbert to the Y. W. C. A. where she was lodging while in Toledo. On the way, Mrs. Humbert complaining that she felt nauseated and had a "sick stomach," suggested stopping at "the Hull Dobbs for a cup of coffee and some toast." Mr. and Mrs. Riggs not wanting anything, waited for Mrs. Humbert while she was in the restaurant.

Unmindful of the fact that the stools at the counter were on a ledge slightly higher than the floor level, Mrs. Humbert when leaving misstepped, and falling, sustained serious injury. She contends that her injury was sustained in the course of and arising out of her employment and that the cases of *Bower* v. *Industrial Commission,* 61 Ohio App., 469, 22 N. E. (2d), 840, and *Outland* v. *Industrial Commission,* 136 Ohio St., 488, 26 N. E. (2d), 760, support that contention.

Assuming. that, because her employment was continuous for and during all of the twenty-four hours of each day, Mrs. Humbert when injured was acting in the course of her employment, the sole question for consideration is: Did her injury arise out of that employment? Was what she was doing when injured in furtherance of the interest or business of her employer?

Her going into the restaurant was in no way connected with or related to her duties as a field representative of Briggs. It was volitional and personal, and if this accident arose out of her employment, then any accident, however caused, occurring to her at any time, anywhere, while an employee of Briggs, must likewise be held to be so. This seems to this court a preposterous and absurd assumption and none of its members can strain his imagination to the conclusive

belief that the Supreme Court has so held in fact or by implication. Nor do we think that the two above-mentioned cases are in any respect decisive of the question here presented.

The state insurance fund is a trust fund held by the state for the purpose for which created. In that sense, it is other people's money and it should be carefully preserved as against claims not reasonably within the purview and purpose of the statute.

Despite the liberality of construction to be given the statute, there must be some limitation in its application, as the courts in varying and changing degree have decided. If there is any underlying fundamental principle involved in the interpretation and application of the statute, additional to what the Supreme Court has already announced, which will tend to ultimate uniformity and stability of decision, we must look to that court to declare it.

In the opinion of that court, in *Ashbrook* v. *Industrial Commission*, 136 Ohio St., 115, 24 N. E. (2d), 33, written by Judge Matthias, and noted as concurred in by all of the other judges, it is said at page 118 thereof:

"The clear purpose of the Workmen's Compensation Law is to provide protection for workmen from the risks and hazards incident to their employment and to assure compensation for injuries sustained as the result of such risks and hazards."

And at page 119:

"It is sufficient to say that an injury is received 'in the course of' the employment when it comes while the workman is doing the duty which he is employed to perform. It 'arises out of' the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the

injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.''

The members of this court can not visualize the accident to Mrs. Humbert as a risk or hazard incident to her employment, or her injury one that could be seen to have followed as a natural incident to her work and to have been contemplated by a reasonable person familiar therewith traceable to her employment, as a contributing proximate cause or in origin a risk connected with the employment and flowing from that source as a rational consequence.

The motion of the Industrial Commission for a directed verdict in its favor having been denied, its motion for judgment notwithstanding the verdict in favor of Mrs. Humbert should have been granted.

Accordingly, the judgment of the Court of Common Pleas is reversed and final judgment is rendered for the appellant, the Industrial Commission.

*Judgment reversed.*

Carpenter and Stuart, JJ., concur.